## PETITION OF WILLIAMSON.

*New York city — assessment for sewerage — Statutory construction — Laws* 1865 *chap.* 321 — *Evidence — presumption in favor of official acts.*

By Laws 1865, chap. 321, the Croton Aqueduct Board is (§ 2) required to lay out the city of New York into districts, to make maps and plans for the purposes of exhibiting a plan of sewerage, which plans are (§ 4) declared to be the permanent plan for the sewerage of each district, subject to such modification as might become necessary by reason of the alteration of street grade or otherwise, and it is (§ 8) declared to be unlawful to construct a sewer unless it shall be in accordance with such plans. *Held*, that the last mentioned provision was subject to that contained in § 4, allowing a modification, etc., and that an assessment for a sewer constructed on a plan different from the plans made by the Croton Aqueduct Board, would not be vacated on that ground, the modification having been properly made.

*Held*, also, that in support of the assessment, the presumption would be that such modification was properly made.

*Held*, further, that if the formalities required to make such modification were not complied with, it was an irregularity which was cured by the provision of Laws of 1872, chap. 580, § 7.

APPEAL by the mayor, aldermen and commonalty of the city of New York from an order at special term vacating an assessment for a sewer. The order was made upon the petition of Richard William-

son. The only material question involved was the construction of a statute in relation to which sufficient facts appear in the opinion.

*E. Delafield Smith* and *Wm. Barnes,* for appellant.

*Neville & Andrews,* for respondent.

DAVIS, P. J. The evidence in this case failed wholly to show that the petitioner was the owner of the lands affected by the assessment at the time of filing his petition. Within the ruling of this court in *Petition of Phillips,* 4 N. Y. Sup. 484, he failed to show any title to have the assessment vacated or reduced. The act of 1858 gives the remedy therein provided to " the party aggrieved," and the second section of that act shows that this phrase was used by the legislature as synonymous with the words " the owners of property." Laws of 1858, chap. 338; Laws of 1874, chap. 312 ; *Townsend* v. *Goelet,* 11 Abb. 187.

The court below treated the petition, containing the objection upon which its decision was based, as regularly before it. It did not appear that any prejudice had arisen from the fact that the copy served on the corporation counsel did not contain that objection. If it had appeared that further notice was necessary, the court would doubtless have ordered a corrected copy to have been served, and postponed the hearing for that purpose. We think the irregularity in the copy served cannot be urged on this appeal.

The special term made its order upon the ground that the sewers for which the assessment was made were not constructed in conformity to the " general plan " devised and adopted by the Croton Aqueduct Board for the sewerage of the particular district. The plan provided for but one sewer in Seventy-second street, located in the center of the street. Two sewers, one on each side of the street, of smaller dimensions, were constructed under contracts made by the board therefor, in conformity to the plans connected with the contract and made part thereof. The second section of the act of 1865, (Laws 1865, chap. 321) entitled "An act in relation to sewerage and drainage in the city of New York," required the Croton Aqueduct Board to lay out the city into as many sewerage districts as they should deem necessary for the general purposes of the act, and to make maps or plans containing various particulars " for the purpose of exhibiting a complete plan of the proposed sewerage therein."

The fourth section provided that "upon the completion of the map or plan for the drainage of any sewerage district, such map or plan shall be the permanent plan for the sewerage of such district, subject, however, to such modifications as may become necessary in consequence of alterations made in the grade of the street or avenue or part thereof, in said district or otherwise." The section then provides for the filing of copies of such complete plans "in the offices of the common council, the comptroller, street commissioner and city inspector." The eighth section of the act declares that : " It shall not be lawful hereafter to construct any sewer or drain in the city of New York unless such sewer or drain shall be in accordance with the general plan devised by said Croton Aqueduct Board for the sewerage of the particular district in which said sewer or drain is proposed to be constructed."

To ascertain the true construction of the act of 1865, its several provisions are to be read together. The prohibition of the eighth section must be considered in connection with the provisions of the fourth section, which declare the general plans to be " *subject to such modifications as may become necessary in consequence of alterations made in the grade of any street or avenue or part thereof in said district or otherwise.*" The eighth section is to be read as though it inhibited constructions otherwise than in accordance with the general plan of the district, as affected by the modifications allowed by the fourth section. If this be not so, then the slightest variation in the location, course, size, grade or depth below present surface or established grades of streets, all of which, under section second of the act, are to be shown upon the district maps, would be fatal to the regularity of the proceedings, and avoid all assessments. When we consider the nature of the subject-matter of the law, the sewerage and drainage of a great city by works to be constructed under ground, upon the efficiency of which must largely depend the health and well-being of a great population, it can hardly be thought that the legislature meant to provide for plans and maps which should be so absolute and arbitrary in their character that no sewer or drain could be lawfully constructed that did not in all details and particulars rigidly adhere to the exact indications of the plans and maps. Hence, the fourth section of the act provides for and authorizes such modifications in the sewerage (and not in the general plans) as the exigencies suggested therein may require. While "the general plan" is to be main-

tained, the special necessities that demand modifications in the work may be respected. There is no provision in the act that the modifications permitted by the fourth section shall be made to appear on the general plans or maps, or that new plans and maps showing them shall be filed; nor does there appear to be any thing to prevent the proper department to provide for the "modifications" in and by the contracts that may be made, and indicate them in the plans and maps that may accompany such contracts. Where this appears to have been done in good faith, and without fraud on the part of the contracting board, it should be presumed to have been rightly done until the contrary is shown.

In this case no evidence-was given, except of the bare fact that in a portion of Seventy-second street, in which the general plan showed one sewer in the center of the street, the contract was for the construction of two smaller ones on the sides of the street. Whether there was or was not such occasion for this "modification" in that particular part of Seventy-second street, was left altogether to conjecture. The court below presumed, in the absence of evidence, that the alteration was not made by the board by a proper decision at a regular meeting. This was shifting the burthen of proof upon the city, in a case where it belonged to the petitioner, and depriving the corporation of the benefit of presumptions which the law makes in its favor where the acts of public officers are sought to be annulled, to its injury. The proceeding, it is not to be forgotten, is not against the officers or board by whom the act was done, and who may be called upon in such case to show their authority, but against a third person — the corporation — who are sought to be affected by the alleged illegality of official acts. We think the court below erred in holding the evidence, or rather the absence of evidence, sufficient to show the invalidity of the assessment.

The act of 1872 is broad enough, we think, to cover and cure the irregularity complained of. The Croton Aqueduct Board certainly, by their contract and the plans connected therewith, made and approved the changes in the sewerage of Seventy-second street. At most, it can only be said, or presumed, in the absence of evidence, that they omitted to do this in the more formal manner of a regular meeting to decide that the changes should be made, and to prepare and file a plan or map thereof. That this was an "omission" within the seventh section of the act of 1872, (chap. 580,

Laws of 1872), seems to have been decided by the Court of Appeals in *Matter of Mayor*, 50 N. Y. 504. In that case the sewers were constructed in streets not included in a sewerage district plan adopted or filed previous to making the contract for the work. The court held that to be an irregularity cured by the act of 1872. In this case it can only be urged that there was a departure from the plan in the execution of the work, in particulars which would have been regular modifications, but for the omission of certain requisite formalities. In *Astor* v. *Mayor of New York*, Judge ROBINSON gave the same effect to the act of 1872, which the Court of Appeals have given, and such were our views in several cases decided at the present term. *Petition of Phillips*, 4 N. Y. Sup. 484; *Petition of Keteltas*, id. 657, and see opinion of ROBINSON, J., in *Astor* v. *Mayor of New York*, in pamphlet.

The order below should be reversed with costs of the appeal, besides disbursements, and the motion denied with $10 costs of opposing same in the court below.

*Order reversed.*